**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

Civil Action No. _____

UNITED PARCEL SERVICE, INC., an Ohio corporation,

    Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE, in its capacity as an agency of the State
of New York,

AMANDA HILLER, in her official capacity as the Acting
Commissioner of the State of New York,

KATHY HOCHUL, in her official capacity as the
Governor of the State of New York,

    Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND
DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

---

United Parcel Service, Inc. ("UPS") files this complaint against the New York State Department of Taxation and Finance ("DTF"), in its capacity as an agency of the State of New York; Amanda Hiller, in her official capacity as the Acting Commissioner of the DTF; and Kathy Hochul, in in her official capacity as the Governor of New York, and alleges by and through its attorneys as follows:

**<u>INTRODUCTION</u>**

1.    New York requires motor carriers to purchase a decal for each vehicle that operates on the New York public highways ("Decal"). This case challenges the constitutionality and legality of the $1.50 fee charged per Decal ("Decal Fee(s)"), the penalty imposed on carriers for failing to

purchase Decals ("Penalty"), and a nearly two-million-dollar Penalty assessment on UPS for not purchasing Decals for some of its vehicles.

2.      UPS is an interstate ground transportation and package delivery company that operates across the United States. Its service routes include nearly every highway and roadway in the continental United States, including interstate public highways in New York. UPS uses New York's highways to deliver packages in New York and to transport packages through New York to other states. Because of New York's unique geographical position, UPS must drive through New York to deliver packages between the 5 Northeastern states and the other 42 states in the continental United States or leave the country and drive through Canada.

3.      New York requires UPS to pay a highway use tax ("HUT"), based on the gross weight of each vehicle and the number of miles each vehicle drives on New York's highways. The HUT exists to compensate the State for expenditures associated with commercial vehicles operating on its highways.

4.      In addition to paying the HUT, UPS is required to apply for a certificate of registration ("Certificate") from the DTF for each vehicle in its fleet that operates on the highways. To prove that each vehicle has a valid Certificate, UPS is also required to obtain a Decal for each registered vehicle and pay the Decal Fee.

5.      New York can require that new Decals be purchased to replace old Decals not more than once per year. Each issuance is referred to as a series. If a vehicle operates on a New York highway without a Decal, the DTF assesses the Penalty. The Penalty ranges from $500 up to $3,500 per violation.

6.      DTF audited UPS for the April 1, 2016 through June 30, 2019 reporting periods ("Periods")[1]. DTF determined that UPS should have purchased 1,829 additional Decals during the Periods and assessed UPS $1,829,000 in Penalties or a $1,000 Penalty per unpurchased Decal ("Penalty Assessment").[2]

7.      DTF has advised UPS it will continue to assess the Penalty at a higher rate after the Periods if DTF believes that UPS should have purchased additional Decals.

8.      In 2016, the Supreme Court, Albany County held that the fee charged for the Decal was unconstitutional because the fee imposed an undue burden on interstate commerce. *See Owner Operator Indep. Drivers Ass'n, Inc. v. N.Y.S. Dep't of Tax'n and Finance*, 34 N.Y.S.3d 332 (Sup. Ct. Albany Cnty. 2016) ("*OOIDA*"). At the time, the State charged $4 for the Decal. In holding that the fee was unconstitutional, the court ruled that *de minimis* impact is not a valid defense to a Commerce Clause discrimination claim. The Penalty for failing to obtain and to pay for a Decal ranged from $500 up to $3,500 per violation.

9.      Despite the court's holding that the fees charged for the Decal are unconstitutional, the New York Legislature left the fee for the Decal in place but reduced the fee from $4 to $1.50. The Legislature left the amount of the Penalty unchanged. As a result, the amount of the Penalty became even more disproportionate to the $1.50 Decal Fee.

---

[1] DTF's HUT audit of UPS was for the tax periods December 1, 2015, through June 30, 2019; however, DTF only audited the Penalty issue for April 1, 2016 through June 30, 2019.

[2] The audit covered Decals issued in series 22 and series 23. The audit, however, did not align with the series effective dates. For example, Decals issued in series 22 were effective January 1, 2016, and expired December 31, 2018, and Decals issued in series 23 were effective January 1, 2019 and expired December 31, 2021.

3

10.     The Decal Fee and the Penalty violate the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. §§ 14501(c)(1), 41713(b)(4), which preempts state laws having an explicit or implicit connection or reference to a motor carrier's prices, routes, or services. *See Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364, 370 (2008) (quoting *Morales v. TWA*, 504 U.S. 374, 378 (1992)).[3]

11.     Among the reasons why the Decal Fee and Penalty violate the FAAAA is that New York forbids carriers like UPS from entering the state without first obtaining a Decal and paying the Decal Fee, or risk being subjected to a civil fine (the Penalty). The pre-entrance requirement creates a substantial and direct burden on carriers like UPS, in the form of increased labor and operational costs, and delays, which all negatively impact delivery routes, services offered, and prices.

12.     The Decal Fee and Penalty also violate the Commerce Clause of the United States Constitution. The regimes on their face and as applied to UPS, impose an undue burden on interstate commerce because the Decal Fee and Penalty are not apportioned based on miles traveled in New York, and have a discriminatory, disproportionate impact on non-New York carriers.

---

[3] The Supreme Court follows *Morales v. TWA*, 504 U.S. 374 (1992), a decision interpreting the Airline Deregulation Act of 1978, when interpreting the FAAAA. *N.H. Motor Transport Ass'n,* 552 U.S. at 370 ("We have said that 'when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well.'" (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 574 U.S. 71, 85 (2005))). *Morales*, in turn, turned to "the similarly worded pre-emption provision of the Employee Retirement Income Security Act of 1974 (ERISA)" when determining the ordinary meaning of the words "relating to." *Morales*, 504 U.S. at 383-84.

13.    The Penalty also violates the Excessive Fines Clause of the United States and New York Constitutions on its face and as applied to UPS. The Penalty is punitive and not remedial because motor carriers fully compensate the State for their use of the public highways through the HUT. The Penalty is also grossly disproportionate to the underlying violation (not purchasing the $1.50 Decal Fee) because the Penalty is, at minimum, 333 times the Decal Fee and can be up to over 2,333 times the Decal Fee. As applied to UPS, the Penalty is also grossly disproportionate because the Penalty Assessment penalizes UPS at 660 times the Decal Fee.

14.    The State is unjustly enriched by the Penalty Assessment because the State is already compensated for UPS's use of the public highways through the HUT.

15.    Consequently, UPS seeks a declaratory ruling from this Court determining that the Decal Fee, Penalty, and the Penalty Assessment violate FAAAA and are unconstitutional, and issuing a permanent injunction enjoining Defendants from enforcing the Decal Fees, the Penalty, and the Penalty Assessment.

## **PARTIES**

16.    Plaintiff UPS is an Ohio corporation with a principal address of 55 Glenlake Parkway, NE, Atlanta, GA 30328.

17.    UPS's primary business is the interstate ground transportation of packages and envelopes.

18.    Defendant DTF is the agency of New York that is primarily responsible for collecting, administering, and enforcing the Decal Fees, the Penalty, and the Penalty Assessment.

5

19.     Defendant Amanda Hiller is the Acting Commissioner of the DTF, an agency of the State that is primarily responsible for collecting, administering, and enforcing the Decal Fees, the Penalty, and the Penalty Assessment. The Acting Commissioner is sued only in her official capacity.

20.     Defendant Kathy Hochul is the Governor of the State. The Governor is sued only in her official capacity.

## JURISDICTION AND VENUE

21.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337(a) (Act of Congress regulating commerce), 28 U.S.C. §§ 1343(a)(3) and (4) (deprivation of rights), and 28 U.S.C. § 2201 (declaratory judgments) because this action arises under the Constitution and laws of the United States, including the Supremacy Clause of the Constitution, Article VI, Clause 2; the Commerce Clause of the Constitution, Article I, Section 8, Clause 3; the Excessive Fines Clause of the Constitution, Eighth Amendment; and the FAAAA (49 U.S.C. §§ 14501(c)(1), 41713(b)(4)); and 42 U.S.C. § 1983.

22.     The Court also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount of the controversy exceeds $75,000.

23.     The Court has supplemental jurisdiction over Plaintiff's state law claims arising under the New York Constitution and unjust enrichment under 28 U.S.C. § 1367.

24.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in the judicial district, they conduct business in the judicial district, and a substantial part of the events giving rise to the claim occurred in this judicial district.

25.     In enforcing the laws of New York, DTF, and its officers, agents, and employees act under color of law and affect the custom, policy, and laws of New York.

26.     An actual, justiciable controversy now exists between Plaintiff and Defendant under 28 U.S.C. § 2201(a). This Court may grant declaratory relief, injunctive relief, and other appropriate relief under 28 U.S.C. §§ 2201-2202 and the Court's equitable powers.

## BACKGROUND

### A.     UPS's business

27.     UPS is one of approximately 200 entities that make up the United Parcel Service's global transportation business (the "UPS Group"). The single largest component of the UPS Group's business is the package business, which entails the pickup, transportation, and delivery of envelopes and packages around the world.

28.     UPS provides the ground transportation services for the UPS Group throughout the United States. Ground transportation services include the receiving, transporting, transferring, storing, handling, and delivering of small packages and envelopes by land. Ground transportation services are the UPS Group's most cost-efficient delivery services.

29.     UPS has affiliates that are involved in other business activities including freight forwarding, transportation of packages by air, sea, and land, and incidental services like customs

brokerage and warehousing. Air transportation services are generally more expensive than ground transportation services.

30.    UPS operates approximately 100,000 vehicles that can make deliveries to nearly every address in the continental United States, or 99% of households and businesses in the United States. UPS operates on nearly every highway and roadway in the continental United States, including New York's public highways.

31.    New York is situated between the Northeast states (Maine, New Hampshire, Vermont, Massachusetts, and Connecticut) and the other 42 states in the continental United States. Because of New York's unique geographical position, UPS must drive through New York to deliver packages between the 5 Northeast states and the other 42 states.

32.    UPS's vehicles situated or driven exclusively, or almost exclusively, in New York, averaged 10,500 New York miles per vehicle per year. Vehicles that operate within and without New York do not drive in the State every year. During the Periods, UPS vehicles operating in interstate commerce drove as little as five New York miles in total.

33.    UPS is registered with the United States Department of Transportation, with various state departments of motor vehicles, and with various states for fuel taxes, which are governed by the International Fuel Tax Agreement ("IFTA"). All fuel taxes governed by IFTA are apportioned to each state in which UPS operates based on the miles UPS drives in the respective jurisdiction and the fuel burned in such jurisdiction. Fuel taxes compensate states for motor carriers' use of states' public roadways. IFTA applies in all states, including New York.

**B.      The HUT**

34.      The HUT is imposed on each carrier for the "privilege of operating any vehicular unit upon the public highways of this state and for the purpose of recompensing the state for the public expenditures incurred by reason of the operations of such vehicular units on the public highways." N.Y. Tax Law § 503(1).

35.      The HUT rate is assessed "based upon the gross weight of each motor vehicle and the number of miles it is operated" on New York highways. *Id*. For purposes of the HUT, a "vehicular unit" includes any trailer, semi-trailer, dolly, or other drawn device, including any automobile, truck, tractor, or other self-propelled device. *Id*. There are certain weight requirements for different types of vehicles. *Id.* §§ 502(2)(a), 501.

36.      Money received from the HUT is deposited into the dedicated highway and bridge trust fund. N.Y. Tax Law § 515; N.Y. Fin. Law § 89-b. The money is used for the reconstruction, replacement, reconditioning, restoration, rehabilitation, and preservation of highways. N.Y. Fin. Law § 89-b(5).

**C.      DTF's regulation of carriers and its historical context**

37.      As a condition of entering New York and using the highways, the State requires carriers to apply for a Certificate for each motor vehicle that operates or will be operated on the New York public highways. N.Y. Tax Law § 502(1)(a). A "carrier" includes "any person having the lawful use or control, or the right to the use or control of any vehicular unit" in New York. *Id.* § 501(5).

38.      The DTF also requires carriers to purchase Decals as proof of obtaining a Certificate. *Id.* § 502(6)(a). The DTF is authorized to issue replacement Decals not more than once

9

a year. N.Y. Tax Law § 509(8). Historically, DTF has issued a new series of Decals every three years. For each new series, carriers seeking to register a new vehicle or to continue their registration of a motor vehicle are required to purchase a new Decal.

39.     The State may impose the Penalty, called a "civil fine" in the statute, against motor carriers who do not obtain a Certificate or purchase a Decal. N.Y. Tax Law § 512(1)(e). For the first violation, the Penalty shall not be less than $500 but not exceed $2,000. *Id*. And for the second violation, the Penalty shall not be less than $1,000 but not exceed $3,500. *Id*.

40.     The *OOIDA* court held that the state's scheme requiring motor carriers to pay fees for the Certificate and the Decal is unconstitutional.

41.     Relying on the Supreme Court's decision in *American Trucking Association, Inc. v. Scheiner*, 483 U.S. 266 (1987) ("*American Trucking*") which addressed a similar issue, the *OOIDA* court held that the fees – which totaled $19[4] – imposed an undue burden on interstate commerce in violation of the Commerce Clause because the fees imposed a higher per mile charge on out-of-state vehicles than in-state. The court rejected the DTF's argument that validity under the Commerce Clause turns on the amount of the fees charged holding that the "Supreme Court has rejected the notion of a 'de minimus' defense" to an allegation that an imposition is discriminatory under the Commerce Clause. *OOIDA*, 34 N.Y.S.3d at 338-39 (internal citations omitted).

42.     Following *American Trucking*, the *OOIDA* court held that the dollar amount of the fees does not affect the conclusion that the cost per mile is greater for non-New York based

---

[4] The Certificate fee was $15, and the Decal fee was $4. N.Y. Tax Law § 502 (West 2014).

businesses than New York based businesses. *Id*. at 338. The Certificate and Decal Fees were unconstitutional because the fees had a discriminatory, disproportionate impact on non-New York carriers. *Id.* at 337-38.

43.    After *OOIDA*, the New York Legislature kept the Certificate and Decal requirements and Decal Fee in place but repealed the $15 Certificate fee and reduced the Decal Fee to $1.50.

44.    Despite reducing the Certificate and Decal fees by over 90%, the Legislature did not reduce the Penalty.

**D.    DTF restricts UPS's ability to purchase Decals**

45.    Decals are purchased through DTF's system called OSCAR. UPS makes commercially reasonable efforts to purchase Decals for every vehicle in its fleet that operates, or will be operated, on New York's public highways. On several occasions, UPS purchased Decals for vehicles that never entered the State; however, on some occasions, UPS did not timely purchase Decals for vehicles that entered the State.

46.    New York routinely restricts UPS's ability to buy Decals because the OSCAR system is unavailable. At times, the OSCAR system is down without warning or does not function properly, so UPS cannot access the system and buy Decals. Other times, DTF prohibits UPS from signing onto OSCAR because DTF believes UPS has a balance due to the State for other, unrelated issues. For example, any time a DTF system generates a balance due for an unrelated tax type such as sales tax, income tax, or payroll tax, or interest or penalties calculated thereon, DTF locks UPS's OSCAR account. The account is locked even before UPS is notified of the alleged balance due. Meaning that, even if UPS has not been notified of the alleged tax deficiency, it cannot purchase

Decals. In many situations the amounts that DTF claims to be due are erroneous. Nonetheless, the OSCAR system remains locked while UPS attempts to resolve the discrepancy.

47.     On or about March 6, 2026, UPS became aware that it was locked out of its OSCAR account because DTF posted a withholding tax balance due of $128.51, inclusive of $1.20 of interest and $127.31 of penalties. No taxes were alleged due. On March 7, 2026, UPS paid $127.31 for the penalty and requested a credit for the interest because the penalty was paid. UPS's access to OSCAR was not restored until April 3, 2026, meaning that UPS could not access its OSCAR account to purchase Decals for at least 28 days.

48.     Locking UPS out of the OSCAR system has the effect of prohibiting UPS from delivering packages in and around New York without incurring significant civil fines. When UPS is locked out of OSCAR, its vehicles cannot enter the state without UPS incurring the Penalty. To avoid the $500 to $3,500 Penalty, UPS would need to alter its routes to drive around New York through Canada because all roadways in the United States that connect the Northeastern states and the rest of the continental United States run through New York. Meaning that, if UPS cannot purchase Decals and does not wish to incur substantial Penalties, its vehicles are either stuck in the Northeast and can only drive between those 5 states, are stuck in the other 42 states, or UPS must drive on international roadways through Canada.

49.     The substantial Penalties assessed on UPS if the Decal Fee is upheld, increase UPS's costs, negatively impact its prices, and would require UPS to alter its routes and services.

**E.**     **Federal law prohibits state laws that directly or indirectly affect motor carriers' prices, routes, and services.**

50.     Congress enacted FAAAA effective January 1, 1995. Section 601(c) of FAAAA preempts states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c). "The ordinary meaning of these words is a broad one." *Morales*, 504 U.S. at 383. A state law might relate to the price, route, or service of a motor carrier and therefore be preempted, "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990)).

51.     In enacting FAAAA, Congress expressly found that states' regulation of intrastate transportation of property had "imposed an unreasonable burden on interstate commerce; [and] impeded the free flow of trade, traffic, and transportation of interstate commerce." FAAAA, Pub. L. No. 103-305, tit. VI, § 601(a)(1), 108 Stat. 1569, 1605 (1994). Through FAAAA, Congress sought to guarantee that interstate carriers would be exclusively governed by a uniform body of federal law, and not by a fragmented array of individual states' laws and regulations. H.R. Conf. Rep. No. 103-677, § 601, at 87 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1759. Congress intended to remove any obstacles to "national and regional carriers attempting to conduct a standard way of doing business." *Id.*

52.     As Congress expressly intended, motor carriers of property rely on the efficiencies of uniform procedures to provide their transportation and delivery services within and among the states. *See* H.R. Conf. Rep. No. 103-677, at 87, *reprinted in* 1994 U.S.C.C.A.N. at 1759. Carriers' operations are designed to maximize speed, reliability, and efficiency. They rely heavily on

13

uniformity—repeating the same processes and procedures for every package, regardless of its destination. This consistency enables carriers to provide superior, dependable service to shippers and consignees alike, and it is indispensable in a highly competitive industry. Any interference hinders motor carriers' ability to transport and deliver property in the timely manner people have come to expect.

**F.      The Decal Fees and Penalty affect motor carriers' prices, routes, and services.**

53.      New York forbids use of its highways without a Decal. The requirement to purchase a Decal prevents carriers from employing uniform procedures for the interstate transportation of property. This disruption in uniformity does and will have a significant effect on the manner, timeliness, and effectiveness of carriers' routes and services. *See e.g., Am.n Trucking Ass'ns, Inc. v. City of Los Angeles* 569 U.S. 641 (2013) (requiring trucks to have placards was preempted); *see also United Parcel Service, Inc. v. Flores-Galarza*, 318 F.3d 323 (1st Cir. 2003), *affirmed after remand* 385 F.3d 9 (1st Cir. 2004) (requiring the UPS to produce certain certificates or manifests was preempted as was the fourteen million dollar fine imposed for failure to comply).

54.      The Decal Fees and Penalty schemes regulate the ways UPS must operate to avoid civil liability. It is exactly the kind of state action FAAAA intended to preempt. Congress intended to cast a very wide net under FAAAA; thus, any state law or regulation that directly or indirectly affects prices, routes, or services is preempted. *See e.g., N.H. Motor Transport Ass'n*, 552 U.S. at 371-73 (2008).

55.      The Decal Fees and Penalty have a direct effect on UPS's routes. UPS is required to obtain both the Decal and pay the Decal Fee as a condition of entering New York and using the New York highways.

56.    If UPS does not obtain a Decal and pay the Decal Fees, UPS has two options: avoid New York or incur the Penalty. Forbidding entrance into the State without first obtaining a Decal and paying the Decal Fee directly affects UPS's routes because it creates extensive and unique requirements that must be met before UPS can enter the state. If UPS wants to use its planned route and travel through New York without a Decal, or without having paid the Decal Fee, UPS will be subject to substantial civil fines.

57.    Denying UPS access to New York's roadways without first obtaining a Decal and paying the Decal Fee directly affects UPS's services. The Decal Fee scheme also affects UPS's ability to offer ground transportation services throughout the continental United States. Without access to New York's roadways, there is no land route in the United States between the Northeast states and the remaining 42 continental states.

58.    Ground transportation services are the UPS Group's most cost-efficient delivery services. Without access to New York, air transportations services would have to replace ground transportation services between the Northeast and rest of the continental United States, increasing UPS's prices for delivery between such regions. UPS's only alternative (outside of driving through Cananda) is to incur the Penalty, which also increases UPS's prices.

## CLAIMS FOR RELIEF

### COUNT ONE
### (VIOLATION OF FAAAA)

59.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

15

60.     An action to enforce rights secured under FAAAA can be maintained under 42 U.S.C § 1983. *See Southwest Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162 (10th Cir., 2001).

61.     FAAAA prohibits states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501. The Decal Fees and Penalty regimes are preempted by FAAAA because the schemes affect rates, routes, and services of interstate motor carriers like UPS because obtaining a Decal and paying the Decal Fees or, in the alternative, paying the Penalty, are all requirements to enter and operate in the State.

62.     If UPS does not obtain a Decal and pay the Decal Fee, it is prohibited from entering New York and must change its route to avoid the State or incur the Penalty. When UPS is required to change routes, this negatively impacts the services UPS offers because a changed route interferes with efficiency and increases delivery time and costs. Such changes also increase UPS's prices.

63.     New York also directly interferes with UPS's ability to comply with its Decal Fee scheme because New York restricts UPS's access to OSCAR. Without access to the OSCAR system, UPS cannot obtain Decals or pay the Decal Fees; instead, it must incur the Penalty or change its routes and services to transport the property around New York. If UPS is required to change its routes because it cannot purchase Decals, it may have to change its services too.

64.     The DTF has previously assessed UPS the Penalty and has told UPS it will continue to assess the Penalty at increasingly higher rates. If the imposition is ongoing, UPS will

16

have to increase its prices and/or change its routes or services because it is unable to use New York highways.

65.     As the State officials charged with the enforcement of the Decal Fee, including the Penalty and Penalty Assessment for noncompliance, Defendants are liable pursuant to 42 U.S.C. § 1983 for the deprivation of rights secured by FAAAA.

66.     Therefore, the Decal Fee and the Penalty violate FAAAA.

## COUNT TWO
### (VIOLATION OF THE COMMERCE CLAUSE)

67.     Plaintiff incorporates all prior paragraphs as though fully set forth herein.

68.     An action to enforce constitutional rights established by the Commerce Clause of the Constitution, Article I, Section 8, Clause 3, may be brought under 42 U.S.C. § 1983.

69.     The Commerce Clause provides that "Congress shall have Power [t]o regulate Commerce . . . among the states." U.S. Const. art. I, ¶ 8(3). The Commerce Clause prohibits state laws and regulations from burdening interstate commerce, penalizing extraterritorial conduct, or imposing charges that have the purpose or effect of discriminating against interstate commerce.

70.     The Decal Fee discriminates against interstate commerce on its face and as applied to UPS because the scheme interferes with the free trade area among the states. The Decal Fee places a much heavier burden on out-of-state carriers that operate in interstate commerce because it subjects out-of-state carriers to a much higher charge per mile traveled in New York than a carrier that operates wholly intrastate. The scheme does not purport to fairly approximate the cost or value of use of a carrier's use of the State highways because the Decal Fee does not vary directly

with miles traveled or with some other proxy for value obtained from State. New York is unique because it imposes a comparable, nonapportionable, fee as a barrier of entry in addition to a weight and distance tax. New York is one of five states that separately impose a weight and distance tax on motor carriers – Oregon, Kentucky, New Mexico, New York, and Connecticut. However, only New York requires motor carriers to pay a separate fee for a decal.

71.    New York's scheme threatens free movement of commerce because carriers operating in interstate commerce, including UPS, may not be able to enter New York without first paying the Decal Fee. The discrimination is evident from UPS's own vehicles. For example, UPS vehicle 272331 operated predominantly in interstate commerce and drove 5 miles in New York during series 22. The series 22 Decal Fee cost vehicle 272331 $0.30 per mile. In contrast, UPS vehicle 269549 operated exclusively in New York and drove 157,309 miles in New York during series 22. The series 22 Decal Fee cost vehicle 269549 $0.00000954 per mile.

72.    The Penalty regime discriminates against interstate commerce on its face and as applied to UPS because the Decal Fee to which it relates discriminates against interstate commerce and like the Decal Fee the Penalty is not apportioned.

73.    The Penalty regime also discriminates against interstate commerce because carriers operating in interstate commerce, including UPS, are prevented from purchasing Decals when the OSCAR system is down thereby subjecting themselves to civil fines or requiring them to avoid New York entirely. The Penalty effectively operates as a barrier for entering the state because UPS has to pay the Penalty as an alternative to the Decal Fee when the DTF prevents UPS from obtaining Decals or paying the Decal Fee. As such, the Penalty provision places a much heavier burden on out-of-state carriers like UPS that operate in interstate commerce because it

subjects out-of-state carriers to a much higher charge per mile traveled in New York than a carrier that operates wholly intrastate.

74.    The Penalty also does not purport to fairly approximate the cost or value of use of a carrier's use of the state highways because the amount of Penalty does not vary directly with miles traveled or with some other proxy for value obtained from state. The discrimination is evident from UPS's own vehicles. For example, UPS vehicle 272331 operated predominately in interstate commerce and only drove 5 miles in New York during series 22. Because vehicle 272331 did not have a permit, the vehicle was assessed the $1,000 Penalty. The cost of the Penalty for vehicle 272331 was $200 per mile. In contrast, UPS vehicle 278137 situated or driven exclusively, or almost exclusively, in New York, drove 66,642 miles in New York during series 22 without a permit. Vehicle 278137 was assessed the $1,000 Penalty, which cost vehicle 278137 $0.015 per mile.

75.    Therefore, the Decal Fee and the Penalty violate the Commerce Clause of the United States Constitution.

## COUNT THREE
## (VIOLATION OF THE EXCESSIVE FINES CLAUSE)

76.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

77.    The Penalty is unlawful under the Excessive Fines Clause of the Eighth Amendment of the U.S. Constitution and the New York Constitution, which prohibit excessive fines. U.S. Const. amend. VIII; N.Y. Const. art. I, § 5; *see Timbs v. Indiana*, 586 U.S. 146, 149-150 (2019) (States are bound by the Eight Amendment's prohibition against excessive fines). These constitutional limitations apply with equal force to state financial penalties. *See United*

19

*States v. Viloski,* 814 F.3d 104 (2d Cir. 2016). A financial penalty constitutes a "fine" for purposes of the Eighth Amendment if the payment or forfeiture is punitive in nature and not purely remedial. *Id*. A fine is excessive if it is "grossly disproportionate" to the gravity of the offense. *Id* at 149.

78.     On its face and as applied to UPS, the Penalty is punitive in nature and not purely remedial because the Penalty is not intended to compensate New York for a loss of or to restore property. The Penalty does not compensate the State for use of the highways and expenses incurred to restore the highways. Instead, the money the State receives from the HUT compensates the State for highway repair expenses. As applied to UPS, UPS pays New York for every vehicle and mile it drives on the highway through the HUT.

79.     The Penalty is also grossly disproportionate to the violation, both on its face and as applied to UPS. The essence of the offense, not purchasing the Decal for $1.50, is minor compared to other prohibited activities. UPS does not intentionally avoid purchasing Decals. In fact, UPS purchased Decals for vehicles that never enter New York. Moreover, DTF often prohibits UPS from purchasing Decals for unrelated activities such as DTF's allegation that UPS owes unrelated taxes.

80.     On its face, the Penalty is also grossly disproportionate to the violation (not purchasing a Decal) because the Penalty ranges from 333 times up to 2,333 times the price of the Decal. And as applied to UPS, the Penalty is more than 666 times the $1.50 Decal Fee, which is grossly disproportionate.

81.     Therefore, the Penalty and the Penalty Assessment are an excessive fine within the meaning of the Excessive Fines Clause of the United States Constitution and the New York Constitution.

20

## COUNT FOUR
## (UNJUST ENRICHMENT)

82.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

83.    In the alternative, UPS asserts a common law claim for unjust enrichment against DTF.

84.    DTF is unjustly enriched by the Penalty because the Penalty greatly outweighs the state's costs incurred to maintain the Decal system.

85.    DTF is also unjustly enriched by the Penalty and the Penalty Assessment because the state receives the HUT to compensate the state for the expenditures associated with motor carriers' use of the public highways, such as UPS.

## COUNT FIVE
## (INJUNCTIVE RELIEF)

86.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

87.    The Decal Fee and Penalty are unconstitutional and illegal for the reasons set forth above.

88.    UPS will suffer harm unless a permanent injunction is issued because UPS will be forced to obtain a Decal, pay the Decal Fee, or face civil penalties in the amount of the Penalty.

89.    A permanent injunction is also in the public's interest because it will prevent the State from enforcing illegal fees and penalties.

## PRAYER FOR RELIEF

90.    WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Court grant the following relief:

a.    A declaration that the Decal Fee and Penalty violate the FAAAA because both regimes amount to a regulation of prices, routes, and services;

b.    A declaration that the Decal Fee and Penalty violate the Commerce Clause of the United States Constitution and therefore, are unconstitutional;

c.    A declaration that the Penalty and the Penalty Assessment are excessive fines under the Eighth Amendment of the United States Constitution and under the New York Constitution and therefore, unconstitutional;

d.    A declaration that the DTF is unjustly enriched by the Penalty Assessment;

e.    A final judgment in favor of Plaintiff permanently enjoining Defendants from imposing the Decal Fee, the Penalty, and the Penalty Assessment on UPS;

f.    An award of Plaintiff's attorneys' fees and costs under 42 U.S.C. § 1988; and

g.    Any other relief as the Court deems just and proper.

*        *        *

Dated: April 3, 2026                                             Respectfully submitted,

*/s/ Francis X. Nolan, IV*
Francis X. Nolan, IV
Chelsea E. Marmor (*pro hac vice forthcoming*)
Eversheds Sutherland (US) LLP
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 389-5083
Facsimile:  (212) 389-5099
Email: FrankNolan@eversheds-sutherland.com
        ChelseaMarmor@eversheds-sutherland.com

Eric S. Tresh (*pro hac vice forthcoming*)
Emma A. Shokeir (*pro hac vice forthcoming*)
Eversheds Sutherland (US) LLP
600 Peachtree Street, NE, Suite 5200
Atlanta, GA 30308
Telephone: (404) 853-8000
Facsimile:  (404) 853-8806
Email: EricTresh@eversheds-sutherland.com
        EmmaShokeir@eversheds-sutherland.com

*Attorneys for Plaintiff*
*United Parcel Service, Inc. (Ohio)*