UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
NOV 23 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

UNITED PARCEL SERVICE, INC., *an Ohio corporation*,

Plaintiff,

26-CV-665 (JLS)

v.

NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, *in its capacity as an agency of the State of New York*; and AMANDA HILLER, *in her official capacity as the Acting Commissioner of the State of New York*,

Defendants.

**DECISION AND ORDER**

Plaintiff United Parcel Service, Inc. ("UPS") seeks declaratory and injunctive relief against the New York State Department of Taxation and Finance ("DTF") and Amanda Hiller, in her official capacity as the Acting Commissioner of the DTF (collectively "Defendants"). Dkt. 1. UPS challenges New York's requirement that commercial motor carriers purchase a decal for each vehicle that operates on New York public highways. *See id.* Specifically, UPS alleges that the fee to purchase a decal (the "Decal Fee") and the penalty imposed on carriers for failure to pay the Decal Fee violate the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), the dormant Commerce Clause of the United States Constitution, and

the Excessive Fines Clauses of the United States and New York Constitutions. *See id.* at 4-5.

Before the Court is Defendants' motion to dismiss the Complaint. Dkt. 7. For the reasons discussed below, Defendants' motion (Dkt. 7) is DENIED.

## BACKGROUND

### I. PROCEDURAL HISTORY

UPS commenced this action on April 3, 2026. Dkt. 1. On June 12, 2026, Defendants moved to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). Dkt. 7. UPS opposed the motion (Dkt. 19), and Defendants replied. Dkt. 20. The Court heard oral argument on October 13, 2026. *See* Dkt. 22. At oral argument, it was stipulated that the motion to dismiss as to Defendant Governor Kathy Hochul would be granted. *Id.*[1]

### II. THE COMPLAINT

UPS is "an interstate ground transportation and package delivery company that operates across the United States." Dkt. 1 ¶2. UPS uses New York's highways to deliver packages in New York and to transport packages through New York and into other states. *Id.* Specifically, UPS alleges that, because of New York's "unique geographical position," its drivers "must drive through New York to deliver packages between the 5 Northeastern states and the other 42 states in the continental United States or leave the country and drive through Canada." *Id.*

---

[1] Defendants' motion to dismiss as to Governor Kathy Hohul was granted by separate Text Order on October 14, 2026. Dkt. 23.

New York imposes an apportioned highway use tax ("HUT") on commercial vehicles, which is "based on the weight of each vehicle and the number of miles each vehicle drives on New York's highways." *Id.* at ¶3. In addition to the HUT, New York also requires commercial shipping companies, like UPS, to apply for a certificate of registration ("Certificate") from the DTF "for each vehicle in its fleet that operates on" the state's highways. *Id.* at ¶4. UPS does not challenge the HUT. *See* Dkt. 19 at 8.

In order to prove that each vehicle has a valid Certificate, UPS must also obtain a Decal for each registered vehicle in its fleet and pay the Decal Fee. *Id.* The fee is set at $1.50 per Decal. *Id.* ¶¶1, 9. New York may require commercial vehicle operators to obtain new Decals to replace old Decals not more than once per year. *Id.* at ¶5. If, however, a commercial vehicle operates on a New York highway without a valid Decal, the DTF assesses a penalty ranging from $500 up to $3,500 per violation. *Id.*; *see also* N.Y. Tax Law § 512(1)(e).

Finally, UPS alleges that, as of the date of its Complaint, the DTF determined that it should have purchased 1,829 additional Decals as a result of an audit conducted for the April 1, 2016 through June 30, 2019 reporting periods. *See* Dkt. ¶6. As a result of this determination, the DTF assessed UPS $1,829,000 in penalties—$1,000 per unpurchased Decal. *Id.*

## III. DEFENDANTS' MOTION TO DISMISS

Defendants moved to dismiss, Dkt. 7, arguing that all claims are barred by the Comity Doctrine and the Tax Injunction Act ("TIA"). *See* Dkt. 7-1 at 7-10.[2] They further argue that UPS's official capacity claims are barred by Defendants' sovereign immunity under the Eleventh Amendment. *See id.* at 10-12. Finally, Defendants argue that each of UPS's causes of action otherwise fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See id.* at 12-23.

## DISCUSSION

## I. STANDARDS OF REVIEW

### a. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a case is properly dismissed when "the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)). The plaintiff bears the burden of "proving by a preponderance of the evidence" that subject matter jurisdiction exists. *Id.*; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Where jurisdictional challenges are raised at the pleading stage, "the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor." *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 292 (W.D.N.Y. 2010), *aff'd* 448 F. App'x 79 (2d Cir. 2011). The Court may consider affidavits and other materials beyond the pleadings to resolve

---

[2] Page numbers refer to the CM/ECF stamped pages in the header of each page.

jurisdictional issues. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). And when a party moves for dismissal pursuant to Rule 12(b)(1) as well as on other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 (1969)).

**b. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d. Cir. 2007). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner*

*Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

Fact-intensive affirmative defenses generally should not be adjudicated on a motion to dismiss. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). A plaintiff, when rebutting a defendant's arguments, is "held only to the usual burden of a motion to dismiss, . . . which is to say that [the plaintiff] must plead sufficient facts to plausibly suggest that they are entitled to relief." *Id.* (citing *Iqbal*, 556 U.S. at 678).

## II. ELEVENTH AMENDMENT IMMUNITY

Eleventh Amendment immunity is based on two fundamental principles: (1) "each State is a sovereign entity in our Federal system . . ." and (2) "[i]t is inherent in the nature of sovereignty not to be amendable to suit of an individual without its consent." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (quoting The Federalist No. 81, p. 487 (C. Rossiter ed. 1961) (A. Hamilton)). Sovereign immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation modified). Suits against individual defendants sued in their official capacities are treated as suits against the "'entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)).

Nonetheless, a limited exception to sovereign immunity "allows a suit for injunctive relief challenging the constitutionality of a state official's actions in

enforcing state law." *Ford v. Reynolds*, 316 F.3d 351, 354–55 (2d Cir. 2003) (quoting *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)); *see also Ex parte Young*, 209 U.S. 123 (1908).[3] To determine whether the doctrine of *Ex parte Young* "avoids an Eleventh Amendment bar to suit," the court must conduct a "straightforward inquiry" to determine "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citation modified).

Here, UPS seeks declaratory and injunctive relief, alleging that "the Decal Fee, Penalty, and the Penalty Assessment violate [the] FAAAA and are unconstitutional . . . ." Dkt. 1 ¶15. The prayer for injunctive relief—that this Court permanently enjoin Defendants from imposing the Decal Fee, the Penalty, and the Penalty Assessment on UPS—satisfies the Supreme Court's "straightforward inquiry." *Verizon Maryland, Inc.* 535 U.S. at 645.[4] Indeed, *Ex parte Young* itself was a suit against state officials to enjoin enforcement of a railroad commission's order requiring a reduction in rates. 209 U.S. at 129. Accordingly, immunity is no bar to UPS's Complaint against Defendants in their official capacities.

---

[3] *See also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").

[4] UPS does not seek retrospective monetary relief from the State. *Compare Edelman v. Jordan*, 415 U.S. 651, 668 (1974).

## III. THE TAX INJUNCTION ACT AND THE COMITY DOCTRINE DO NOT BAR THIS ACTION

### a. The Tax Injunction Act

The TIA bars district courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any *tax* under State law . . . ." 28 U.S.C. § 1341 (emphasis added).[5] The text of the TIA "may be best understood as but a partial codification of the federal reluctance to interfere with state taxation." *Nat'l Priv. Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 590 (1995). By its terms, the TIA relates only to "taxes"—not fees, penalties, or other regulatory assessments lacking the defining characteristics of taxation.

Indeed, the Supreme Court has drawn a clear line between a tax and a penalty. "A tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act." *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996) (quoting *United States v. La Franca*, 282 U.S. 568, 472 (1931)).[6] As such, the relevant question becomes "whether the exaction . . . is imposed for violation of the law." *Nat'l Fed'n of Indep.*

---

[5] The plain language of the TIA "prohibits a federal district court, in most circumstances, from issuing an injunction enjoining the collection of state taxes." *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982).

[6] *See also* Black's Law Dictionary (11th ed. 2019 (defining "tax" as "a charge, usually monetary, imposed by the government on persons, entities, transactions, or property to yield public revenue; and defining "civil penalty" as "[a] fine assessed for a violation of a statute or regulation.").

*Bus. v. Sebelius*, 567 U.S. 519, 663 (2012) (Scalia, J., dissenting).[7] And "if the concept of penalty means anything, it means punishment for an unlawful act or omission." *Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. at 224.

As alleged, UPS's complaint does not challenge the HUT—a tax it claims it pays "without objection." Dkt. 1; Dkt. 19 at 18. Instead, UPS challenges only the "Decal Fee, the Penalty, and the Penalty Assessment." Dkt. 1 ¶15. As detailed in the Complaint and the statute itself, the Decal Fee is a fee, and the penalty structure associated with it resembles a civil fine, not a tax. *Id.* ¶39; N.Y. Tax Law § 512(1)(e). At this stage in the litigation, the Court is unable to conclude that this action "plainly constitutes the type of interference in state court proceedings that the TIA is meant to prevent." *MLB Enters., Corp. v. New York State Dep't of Tax'n & Fin.*, 832 F. App'x 24 (2d Cir. 2020); *see also Mobil Oil Corp. v. Tully*, 639 F.2d 912, 918 (2d Cir. 1981) (a provision is included in a state's tax law "should not lead to automatic sanctuary under [the TIA]."). Accordingly, the TIA does not bar UPS's challenge to Defendants' Decal Fee or the administration of it.

---

[7] Logically then, the Court has never classified an exaction for a violation of the law as a tax. *See Sebelius*, 567 U.S. at 664. In fact, Justice Scalia further explained that the Court "never held that any exaction imposed for violation of the law is an exercise of Congress' taxing power—even when the statute calls it a tax, much less when . . . the statute repeatedly calls it a penalty." *Sebelius*, 567 U.S. 519, 662 (2012) (Scalia, J., dissenting). Relevant here, Section 512 is entitled "Penalties and interest" and states that failure to obtain a certificate of registration or decal shall result in a "civil fine." N.Y. Tax Law § 512(1)(e).

**b. Comity**

The principle of comity "prevents a taxpayer from seeking damages in a [Section] 1983 action if a plain, adequate, and complete remedy may be had in state court." *Bernard v. Vill. of Spring Valley*, N.Y., 30 F.3d 294, 297 (2d Cir. 1994) (internal quotations omitted). Further, comity is discretionary and is relied upon "to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 425 (2010) (citation modified).

The doctrine principally "instructs federal courts to refrain from granting relief to taxpayer-plaintiffs in suits that contest taxpayer liability in a manner that interferes with a state's administration of its tax system." *Abuzaid v. Mattox*, 726 F.3d 311, 315 (2d Cir. 2013) (citing *Levin*, 560 U.S. at 418). This concept reflects a proper respect for the States and their institutions and "a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Levin*, 560 U.S. 421 (citation modified).

UPS claims that its challenge does not involve state tax administration or fiscal operations because the Decal Fee and associated penalties "are separate and distinct from the HUT." Dkt. 19 at 14. On the other hand, Defendants argue that the Decal Fee and associated penalties "are integral parts of New York's HUT administration." Dkt. 7-1 at 10. Yet, Defendants only go so far—refusing to define the Decal Fee and associated penalties as a "tax." And the fact that "penalties are a

routine feature of state and federal taxation designed to *encourage* prompt payment of taxes" does not make them "taxes" by definition. *Id.* (emphasis added); *see also Healthcare Distribution All. v. Zucker*, 353 F. Supp. 3d 235 (S.D.N.Y. 2018) (comity does not encompass penalties), *rev'd in part sub nom. Ass'n for Accessible Medicines v. James*, 974 F.3d 216 (2d Cir. 2020), *vacated in part*, No. 18 CIV. 6168 (KPF), 2021 WL 12103902 (S.D.N.Y. Oct. 20, 2021); *Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App'x 527, 538 (3d Cir. 2015) (Ambro, J., concurring) (regulatory fees are not subject to comity abstention). Moreover, UPS does not "seek to avoid the payment of state taxes nor dispute the amounts owed." Dkt. 19 at 14; *Dorce*, 2 F.4th at 101 (quoting *Levin*, 560 U.S. at 430).[8]

Instead, UPS challenges the Decal Fee and penalty, and invalidating either would not deprive Defendants of tax revenue because the HUT operates independently. N.Y. Tax Law § 503. As set forth in the statutory framework, the Defendants' Decal Fee and associated penalties are separate and distinct from any tax scheme—*i.e.*, the HUT. *Compare* N.Y. Tax Law §§ 512(1)(a), (1)(d) (imposing a penalty for failure to file a return or to pay any tax) *with* 512(1)(e) (imposing a "civil fine" for a failure to obtain a certificate of registration or decal). Accordingly, the Court cannot conclude at this juncture that the Decal Fee and associated penalty

---

[8] The Court is also unpersuaded by Defendants' contention that, "[w]ithout the decal system, vehicles could easily evade HUT obligations because New York State would not know whether vehicles are registered to pay the tax." Dkt. 20 at 8. This conclusion necessarily depends upon drawing a factual conclusion, which is not amendable to resolution on a motion to dismiss. *See, e.g.*, *Ray v. Weit*, 708 F. App'x 719, 722 (2d Cir. 2017) (explaining that resolution of a factual dispute is inappropriate on a motion to dismiss).

operate as a tax such that comity bars this case. Instead, the Decal Fee is a fee, and the associated penalty operates as an exaction for an unlawful act—failure to obtain a certificate of registration or decal as required by N.Y. Tax Law § 512(1)(e)—which forms the basis of UPS's challenge under the FAAAA, the dormant Commerce Clause of the United States Constitution, and the Excessive Fines Clause of the United States and New York Constitutions. In sum, comity is no bar here.

## IV. UPS'S CLAIMS

### a. FAAAA Preemption

The FAAAA provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1). Congress deliberately made this preemption clause broad—encompassing state laws whose effect "on rates, routes, or services 'is only indirect[.]'" *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386 (1992)).

The Supreme Court has concluded that the FAAAA preempts placard requirements imposed on carriers. *See American Trucking Associations, Inc. v. City of Los Angeles*, 569 U.S. 641 (2013). There, the Court explained that the FAAAA "expressly preempts" a requirement that a trucking company display designated placards on its vehicles before it can transport cargo at the Port of Los Angeles. *Id.* at 644. Specifically, the Court described the Port's placard requirement as an exercise of "classic regulatory authority—complete with the use of criminal

penalties . . . ." *Id.* at 650. While this requirement was part of a contract between the Port and the trucking company, it nonetheless had the "force and effect of law" by forcing the trucking company to alter its conduct "from the threat of criminal sanctions." *Id.* at 651. And as a result, the placard requirement was preempted by the FAAAA, despite the Port urging it was akin to a private agreement. *See id.* at 649-52.

Similarly, in an analogous case, the First Circuit concluded that a package-delivery certificate requirement and related fine "directly and significantly affects UPS's routes and services, which depend upon an orderly flow of packages." *United Parcel Service, Inc. v. Flores-Galarza*, 318 F.3d 323, 336 (1st Cir. 2003). The costs of imposing this type of certificate requirement under the threat of a fine, the First Circuit explained, necessarily have negative impacts on UPS's prices as well. *See id.*

Here, the Decal Fee and associated penalties plausibly have "the force and effect of law" as they relate to UPS's ability to transport and deliver packages in New York. Defendants' decal scheme conditions UPS's operations in New York upon possession of a Decal for every vehicle that enters the state. And, at this stage, it is plausible that the penalties for non-compliance necessarily impact UPS's ability to provide service in New York and its prices such that FAAAA preemption applies.

### i. 49 U.S.C. § 14506(b)(2) Carve-Out

In an attempt to exclude its Decal Fee scheme from the FAAAA's plain text, Defendants' contend that 49 U.S.C. § 14506(b)(2)[9] provides a special carve-out for New York's credentialing system, allowing it to avoid preemption under the statute's general provision. *See* Dkt. 7-1 at 14-15. By doing so, Defendants invoke the "basic principle of statutory construction that a specific statute controls over a general provision . . . particularly when the two are interrelated and closely positioned." *Id.* at 15 (quoting *New York State Vegetable Growers Ass'n, Inc. v. Cuomo*, No. 19-CV-1720-LJV-MJR, 2021 WL 2651996, at *19 (W.D.N.Y. May 28, 2021)); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012).

As an initial matter, Section 14506(b)(2)'s carve-out applies only to pre-October 1, 2006, highway-use-tax schemes not collected through the International Fuel Tax Agreement. *See* 49 U.S.C. § 14506(b)(2). As UPS points out, whether Defendants' Decal Fee scheme qualifies in its current form "is a factual question requiring development of the record." Dkt. 19 at 23. Specifically, the Court is unable to determine, at this stage, whether Defendants' Decal Fee scheme—as amended after *Owner Operator Indep. Drivers Ass'n v. New York State Dep't of*

---

[9] Section 14506(b)(2) provides: "a State may continue to require display of credentials that are required . . . under the International Fuel Tax Agreement under section 31705 or under an applicable State law if, on October 1, 2006, the State has a form of highway use taxation not subject to collection through the International Fuel Tax Agreement . . . ." 49 U.S.C. § 14506(b)(2).

*Tax'n & Fin.*, 52 Misc. 3d 855, 34 N.Y.S.3d 332 (Albany Cnty. Sup. Ct. 2016) ("*OOIDA*")—falls within Section 14506(b)(2)'s safe harbor.

Moreover, the plain language of Section 14506(b)(2) authorizes a *credential requirement* under a state's highway use tax—not fees for the credential itself, or penalties or fines resulting from non-compliance. At this stage, and being unable to discern any different meaning from Section 14506(b)(2)'s text, the Court cannot conclude that this carve-out applies here.[10]

Finally, the specific-controls-over-general canon that Defendants rely on applies only when the specific and general provisions of a statute "cannot be reconciled." *Schneiderman v. Am. Chem. Soc'y*, 172 F.4th 158, 181 (2d Cir. 2026) (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012). At this point, the Court is unable to conclude as a matter of law that Section 14506(b)(2)'s narrow carve-out permitting a registration and credential requirement cannot be reconciled with Section 14506(c)(1)'s broad preemption rule. Nothing in Section 14506(b)(2)'s plain text or regulatory scheme suggests that states would be

---

[10] The plain text of Section 14506(b)(2), indeed, seemingly compels the opposite conclusion because an exception not covered is to be treated as not covered. *See generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93-94 (2012); *Petteys v. Butler*, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting) (explaining that a "statute means what it literally says or that it does not; that if the Congress intended to provide additional exceptions, it would have done so in clear language; and that the recognized purpose and aim of the statute are more consistently and protectively to be served if the statute is construed literally and objectively rather than non-literally and subjectively on a case-by-case application. The latter inevitably is a weakening process.); *Ebert v. Poston*, 266 U.S. 548, 554 (1925) (per Brandeis, J.) ("A *casus omissus* does not justify judicial legislation."); *Iselin v. United States*, 270 U.S. 245, 251 (1926) (per Brandeis, J.) ("To supply omissions transcends the judicial function.").

broadly immune from preemption when imposing unlimited penalty structures through such a narrow exception. *See, e.g.*, *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) (explaining that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions."). Instead, UPS has stated plausibly a claim for FAAAA preemption that survives Defendants' motion to dismiss.

**b. Commerce Clause Violation**

The Constitution vests Congress with the power to "regulate Commerce . . . among the several States." U.S. CONST. art. I, § 8, cl. 3. Over time, the Supreme Court observed that this clause also contains a negative command that forbids state economic legislation discriminating against interstate commerce. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368-70 (2023) (citing *Gibbons v. Ogden*, 22 U.S. 1, 6 L. Ed. 23 (1824)); *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970); *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019) (interpreting the Commerce Clause "as the primary safeguard against state protectionism.").[11]

Under the negative Commerce Clause (*i.e.*, the dormant Commerce Clause), the first step when evaluating a state law "is to determine whether it 'regulates evenhandedly with only "incidental" effects on interstate commerce, or

[11] The "fundamental objective" of the dormant Commerce Clause is to preserve "a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 279 (1997).

discriminates against interstate commerce.'" *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994) (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). As its used here, the term "discrimination" means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* And "[i]f a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Id.* (citation modified). By contrast, "nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pike*, 397 U.S. at 142). Relevant here, the Supreme Court explained that "a state tax that favors in-state business over out-of-state business for no other reason than the location of its business is prohibited by the Commerce Clause." *Am. Trucking Associations, Inc. v. Scheiner*, 483 U.S. 266, 286 (1987) (citations omitted).

In *Scheiner*, the Court analyzed the constitutionality of two flat taxes: (1) an annual $25.00 fee for an identification marker imposed on out-of-state trucks only; and (2) an annual fee of $36.00 per vehicle axle imposed on in-state and out-of-state vehicles. *See id.* at 274. The Court concluded that the $25.00 marker fee was "plainly discriminatory" in that it imposed a cost per mile on out-of-state trucks that "is approximately five times as heavy as the cost per mile borne by local trucks." *Id.* at 286. The Court went on to explain that the $36.00 per vehicle axle tax had a similar "forbidden impact on interstate commerce because it exerts an inexorable hydraulic pressure on interstate businesses to ply their trade within the State that

enacted the measure rather than 'among the several States.'" *Id.* 286-87 (quoting U.S. CONST., art. I, § 8, cl. 3).

Here, UPS alleges plausibly that Defendants' Decal Fee scheme discriminates against interstate commerce. *See* Dkt. 1 at 17-19. On its face, the Decal Fee system imposes a disproportionate per-mile cost on carriers driving fewer miles in New York than carriers that drive more, exclusively within state lines. *See id.* ¶17 (illustrating the cost per-mile difference between UPS vehicles that operate predominantly in interstate commerce versus UPS vehicles that operate exclusively in New York). Also noteworthy is *OOIDA*'s rejection of "the notion of a '*de minimus*' defense to an allegation that a tax is discriminatory under the Commerce Clause." *OOIDA*, 34 N.Y.S.3d at 338-39 (citing *Fulton Corp. v. Faulkner*, 516 U.S. 325, 333 n.3 (1996)).

Defendants rightly contend that its Decal Fee scheme could be constitutional if it (1) applies equally to interstate and intrastate activity; and (2) fairly approximates the cost of the facilities used by assessed vehicles. *See* Dkt. 7-1 (citing *Scheiner*, 483 U.S. at 289). But such an analysis would involve the use of "empirical data—including the per-vehicle mileage, the actual cost of road maintenance attributable to the assessed class of vehicles, and the comparative burden borne by in-state versus out-of-state carriers." Dkt. 19 at 24. Making these findings necessarily requires resolving factual issues, which are not properly before the Court on a motion to dismiss. As a result, UPS has alleged plausibly a Commerce Clause violation.

### c. Excessive Fines Clause Violation

The "touchstone" of an excessive fines claim under the Eight Amendment is that the amount of the fine "must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The inquiry into an excessive fines claim involves two steps: (1) the fine must be punitive in nature (not remedial); and (2) the fine must be unconstitutionally excessive. *See United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016).

Under step one, a fine is punitive if its purpose is to punish rather than compensate the Government for a loss or to restore property to its rightful owner. *See id.*; *see also Paroline v. United States*, 572 U.S. 434, 456 (2014) ("The primary goal of restitution is remedial or compensatory, but it also serves punitive purposes" which "may be sufficient to bring it within the purview of the Excessive Fines Clause.") (citation modified). As alleged by UPS, the "civil fine" imposed under N.Y. Tax Law § 512(1)(e) is punitive in nature and not otherwise intended to compensate New York for a loss or to restore property. *See* Dkt. 1 ¶79; N.Y. Tax Law § 512(1)(e). As such, UPS has alleged plausibly that this fine functions to punish and deter invoking the Eighth Amendment's constraints.

Next, when determining whether a fine is unconstitutionally excessive, courts employ four factors:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine

> that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015) (citation modified). At this stage, the merits of Defendants' arguments are premature. *See* Dkt. 7-1 at 22-25. Without the benefit of a factual record, at a minimum, this Court cannot characterize UPS's conduct as a deliberate pattern of noncompliance or make findings with respect to UPS's ability to timely purchase decals. *See id.* Rather, UPS's excessive fines claim, as alleged, presents a plausible cause of action that may proceed.

**d. Unjust Enrichment**

To state a claim for unjust enrichment in New York, a plaintiff must allege that "(1) the other party was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110 (2011) (citation modified). Defendants lodge three arguments against this cause of action: (1) UPS has not alleged that it ever paid the penalties assessed; (2) UPS cannot seek injunctive relief against state defendants on the basis of an alleged violation of state law; and (3) UPS has not alleged plausibly that equity and good conscience require Defendants to repay UPS. *See* Dkt. 19 at 30-31.

While UPS alleges that it has not yet paid the penalties assessed, a plaintiff need not first "expose [it]self to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be

enforced." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)). *See also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that [the plaintiff] first expose [it]self to actual arrest or prosecution to be entitled to challenge [the] statute that [it] claims deters the exercise of [its] constitutional rights."). And the identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact "necessarily depends on the particular circumstances at issue." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (quoting *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)). As alleged, UPS faces the threat of enforcement through possible collection proceedings and lien exposure. Dkt. 1 ¶¶ 53-58.[12]

Next, UPS challenges the Decal Fee and associated penalty based on violations of federal law, not state law. *See id.* at 15-20. That UPS included one cause of action under state law does not eliminate its other causes of action seeking prospective declaratory relief under federal law. *Compare Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). As such, allowing UPS to vindicate its unjust enrichment claim in the same action as its federal law claims will not run afoul of "the principles of federalism that underlie the Eleventh Amendment." *Id.*

Finally, Defendants' argument that they cannot be liable as a result of "acting in accordance with its duties and powers under the Tax Law," is unavailing.

---

[12] Whether Defendants have been unjustly enriched and to what extent UPS may be entitled to a recovery, are questions more properly suited for summary judgment with a full factual record, or trial. At this stage, the Court concludes only that UPS has alleged plausibly a cause of action for unjust enrichment.

UPS has presented a constitutional challenge to the laws upon which Defendants rely to assess the penalties at issue. If this Court later concludes that such laws are unconstitutional, those "duties and powers" offer no defense. Accordingly, UPS has stated a plausible cause of action for unjust enrichment.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss (Dkt. 7) is DENIED.

SO ORDERED.

Dated: November 23, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE